**NSK LTD. and NSK Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**the Torrington Company; Federal–Mogul Corporation, Defendants–Intervenors.**

Court No. 91–08–00578.

United States Court of International Trade.

Aug. 24, 1992.

See also 788 F.Supp. 1225, 788 F.Supp. 1228, 798 F.Supp. 716.

Coudert Brothers, Robert A. Lipstein, Matthew P. Jaffe and Nathan V. Holt, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Velta A. Melnbrencis, of counsel), Stephen J. Claeys, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, John M. Breen and Amy S. Dwyer, Washington, D.C., for defendant-intervenor The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, D.C., for defendant-intervenor Federal–Mogul Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, NSK Ltd. and NSK Corporation ("NSK"), move pursuant to Rule 56.1 of the Rules of this Court for partial judgment on the agency record alleging that the Department of Commerce, International Trade Administration's ("ITA") refusal to correct an alleged clerical error in relation to the cost of production for one of NSK's cylindrical roller bearings was not supported by substantial evidence on the record and not in accordance with law. NSK requests this Court to remand this action to the ITA to correct this alleged error or, in the alternative, to use NSK's suggested alternative cost of production data for the cylindrical roller bearing at issue as "best information available" ("BIA").

The administrative determination under review is the ITA's final results in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews* ("*Final Results*"), 56 Fed.Reg. 31,754 (1991). Substantive issues raised by NSK in the underlying administrative proceeding were addressed by the ITA in the issues appendix to *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Ad-*

ministrative Review ("*Issues Appendix*"), 56 Fed.Reg. 31,692 (1991).

## Background

On June 11, 1990, the ITA initiated an administrative review of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews ("Initiation"),* 55 Fed.Reg. 23,575 (1990). NSK participated in this review. Administrative Record Public ("AR Pub.") Doc. 4.

ITA reviewed NSK's costs of production for cylindrical roller bearings because the ITA had determined in the original less than fair value investigation that NSK was selling cylindrical roller bearings in its home market at below cost of production prices. *See Final Determinations of Sales at Less Than Fair Value; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan,* 54 Fed.Reg. 19,101, 19,107 (1989).

On October 18, 1990, NSK submitted to the ITA its section D questionnaire response containing cost of production information for the part in question. AR Pub. Doc. 406.

On March 15, 1991, the ITA published its preliminary determination in the administrative review finding that NSK sold cylindrical roller bearings at less than fair value during the period of review and at prices less than the cost of production in its home market. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews ("Preliminary Results"),* 56 Fed.Reg. 11,-186, 11,188–89 (1991). The margin calculated for NSK's cylindrical roller bearings was 54.77%. *Preliminary Results,* 56 Fed. Reg. at 11,189.

NSK says it was surprised by its high margin in the Preliminary Results and attempted to determine why such a high margin had been imposed. NSK states that it discovered that it had provided incorrect cost of production data for the rollers for one type of cylindrical roller bearing which accounted for many of NSK's cylindrical roller bearing sales in the U.S. market. NSK alleges that its reported cost of production was ten times the actual cost of production and that this accounted for much of NSK's margin. *Memorandum of Points and Authorities in Support of Motion for Partial Judgment on the Agency Record ("NSK's Memorandum")* at 5–6.

On March 20, 1991, NSK submitted a letter to the ITA alleging that NSK had supplied the ITA with inaccurate cost of production data for the part in question. NSK requested the ITA to have a verification team, which was in Japan at that time on another case, verify NSK's corrected information. AR Pub.Doc. 762. NSK stated that it had recently converted production of this part from a batch manufacturing process to a continuous manufacturing process which vastly reduced processing time for each part, but that NSK's computer department had failed to make the required change in the formula used to calculate processing time for the part at issue. As a result, when NSK submitted its cost of production data for the part in question, it submitted the out of date, longer processing time for that part which resulted in vastly increasing its cost of production. *NSK's Memorandum* at 3–7.

In its March 20, 1991 letter, NSK alleged that its clerical error was obvious from an examination of the administrative record before the ITA at the time of the Preliminary Results. NSK stated that the production costs for the roller in question were "more than 5 times the highest reported costs, and nearly 10 times the cost for the most similar rollers." AR Pub.Doc. 762. NSK alleged that this was sufficient information for the ITA to determine that NSK had made a clerical error which should be corrected. *Id.*

On April 11, 1991, NSK submitted its pre-hearing brief in which it expanded its presentation of evidence of an obvious clerical error, submitted alleged correct data, and suggested that if the ITA refused to use the corrected data, that the ITA use cost of production data for the next largest roller size as BIA. AR Pub.Doc. 834.

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results*, 56 Fed.Reg. 31,754. ITA stated that NSK's new information was rejected as untimely. *Issues Appendix*, 56 Fed. Reg. at 31,741–42. ITA also stated that it was unable to determine from information on the record that NSK's original submission of information was in error, or that the newly submitted information was correct. *Id.* ITA decided to use NSK's originally submitted information. *Id.* at 31,742. NSK's final margin for cylindrical roller bearings was 51.82%. *Final Results*, 56 Fed.Reg. at 31,756.

## Discussion

The Court's jurisdiction over this matter is derived from 28 U.S.C. § 1581(c) (1988).[1]

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

This Court has also stated "that fair and accurate determinations are fundamental to the proper administration of our dumping laws" and that "courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination." *Koyo Seiko Co. v. United States*, 14 CIT ——, ——, 746 F.Supp. 1108, 1110 (1990); *see, e.g., Daewoo Elecs. Co. v.*

*United States*, 13 CIT 253, 279–80, 712 F.Supp. 931, 954 (1989); *Asociacion Colombiana de Exportadores v. United States*, 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989), *aff'd*, 901 F.2d 1089 (Fed.Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *Serampore Indus. Pvt. Ltd. v. United States Dep't of Commerce*, 12 CIT 825, 834, 696 F.Supp. 665, 673 (1988); *Gilmore Steel Corp. v. United States*, 7 CIT 219, 223–24, 585 F.Supp. 670, 674 (1984); *Atlantic Sugar, Ltd. v. United States*, 1 CIT 211, 511 F.Supp. 819 (1981).

Defendant-intervenor Federal–Mogul Corporation took no part in this phase of this proceeding since it does not produce cylindrical roller bearings and therefore does not have standing to support the contested determination in regard to NSK's cylindrical roller bearings. *Federal–Mogul Corporation's Response to Plaintiffs' Motion for Judgment on the Agency Record* at 2.

### 1. *Clerical Error*

ITA has promulgated a regulation which sets time limits on the submission of factual information in administrative reviews. The regulation states in pertinent part:

**§ 353.31 Submission of factual information.**

(a) *Time limits in general.* (1) Except as provided in paragraphs (a)(2) and (b) of this section, submissions of factual information for the Secretary's consideration shall be submitted not later than:

. . . . .

(ii) For the Secretary's final results of an administrative review under § 353.-22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review;

. . . .

(2) Any interested party . . . may submit factual information to rebut, clarify,

---

**1.** 28 U.S.C. § 1581(c) provides in pertinent part: The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

or correct factual information submitted by an interested party ... at any time prior to the deadline provided in this section for submission of such factual information or, if later, 10 days after the date such factual information is served on the interested party....

(3) The Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit.

19 C.F.R. § 353.31(a) (1991).

It is clear from the administrative record before this Court that NSK attempted to provide the ITA with factual information to correct its alleged clerical error after the publication of the Preliminary Results of this review and over 180 days from the publication of the initiation of this review. *Compare Initiation*, 55 Fed.Reg. 23,575, *with Preliminary Results*, 56 Fed.Reg. 11,186 *and* AR Pub.Doc. 762.

In general, this Court has upheld the ITA's rejection of untimely submitted factual information pursuant to 19 C.F.R. § 353.31(a). *See, e.g., Asociacion*, 13 CIT at 24, 704 F.Supp. at 1124; *Seattle Marine Fishing Supply Co. v. United States*, 12 CIT 60, 71, 679 F.Supp. 1119, 1128 (1988).

However, this Court has also stated that in cases where corrected information was untimely filed and rejected by the ITA, "if [an] error was so egregious and so obvious that the failure to correct it was an abuse of discretion and undermined the interests of justice, the Court may remand the case to the ITA for adjustment of the calculations." *Tehnoimportexport v. United States*, 15 CIT ——, ——, 766 F.Supp. 1169, 1178 (1991).

■ In an effort to reconcile 19 C.F.R. § 353.31(a) with this Court's decision in *Tehnoimportexport*, the ITA has decided that an error in original information submitted by a respondent must be obvious from the administrative record in existence at the time the error is brought to the ITA's attention. Also, the ITA must be able to tell from the administrative record in existence at the time the error is pointed out, that the untimely submitted new infor-

mation is correct. *Issues Appendix*, 56 Fed.Reg. at 31,741. This Court finds that this is a reasonable exercise of the ITA's discretion in implementing 19 C.F.R. § 353.31(a) and is in accordance with law.

■ Therefore, the question before the Court is whether the ITA's determination that the original information submitted by NSK was not obviously in error and that the newly submitted information was not obviously correct was supported by substantial evidence.

In its March 20, 1991, letter to the ITA pointing out the alleged error, NSK makes much of the fact that its reported cost of production for the roller in issue was five to ten times higher than the cost of production reported for similar rollers. AR Pub. Doc. 762.

In its pre-hearing brief submitted April 11, 1991, NSK provided detailed *new information* on the production process for the roller at issue, as well as corrected cost of production information, in an attempt to convince the ITA to correct the alleged error. AR Pub.Doc. 834.

The submission of detailed factual information at the pre-hearing brief stage of an administrative review is clearly untimely under any circumstances. The ITA was justified in rejecting this information as untimely. 19 C.F.R. § 353.31(a). In addition, the volume of information which NSK felt obliged to present to the ITA lends support for the position that the error alleged by NSK was anything but obvious.

While NSK alleges that a cost of production five to ten times higher than that reported for similar cylindrical roller bearings is evidence that an error has occurred, this is not necessarily true. Different production techniques will result in different costs of production. There is no obvious evidence in the administrative record, as it existed at the time NSK notified the ITA of the alleged error, of what the production process for the roller at issue was. There was no reason to believe, without further inquiry by the ITA, that the roller was, or was not, being produced by the same method as the other rollers used in similar cylin-

drical roller bearings. It is just this sort of open-ended inquiry which the ITA rightly seeks to avoid in these situations.

■ NSK also relies on 19 U.S.C. § 1675(f) (1988) which allows the ITA the discretion to correct ministerial errors in final determinations.[2] NSK's reliance on section 1675(f) is misplaced since this section clearly applies only to clerical errors discovered in a final determination and not to alleged errors in a respondent's own submissions discovered in a preliminary determination.

Therefore, this Court finds that it was reasonable for the ITA to determine that the information available on the administrative record, at the time the alleged error was pointed out by NSK, was insufficient to show that a clerical error that should be corrected had been made. The ITA's decision that NSK's originally submitted information was correct and to use that information in calculating NSK's margins was supported by substantial evidence on the record and was in accordance with law.

2. *Best Information Available*

■ NSK argues that if the ITA was justified in rejecting its corrected information, the ITA should be required to use alternative information as BIA. NSK suggests that the Court require the ITA to use the cost of production information previously submitted for the cylindrical roller bearing which NSK claims is most similar to the cylindrical roller bearing at issue here. *NSK's Memorandum* at 19–20; *Plaintiffs' Reply Memorandum in Support of Motion for Partial Judgment on the Agency Record* at 16–18.

19 U.S.C. § 1677e(c) (1988) provides that:

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is

unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

*See also* 19 C.F.R. § 353.37 (1991).

■ It is clear from the language of the statute that the use of BIA is not warranted in this situation. ITA is to use BIA only in situations where a respondent has refused to provide requested information, is unable to provide the information within the time limits set by the ITA or in the form required by the ITA, or if the information provided by the respondent cannot be verified. 19 U.S.C. § 1677e(c). In this case NSK provided the information requested on time and in the form required. The fact that the ITA chose not to verify NSK's cost of production submission does not mean that the information provided by NSK failed verification. Therefore, the prerequisites for the use of BIA by the ITA were not met.

*Conclusion*

The ITA's decision not to correct NSK's alleged clerical error in regard to the cost of production of one cylindrical roller bearing was supported by substantial evidence on the record and in accordance with law. Also, the prerequisites for the use of BIA were not met.

AMENDED PARTIAL JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for partial judgment on the agency record, and the Court, after due deliberation, having rendered a decision therein; now therefore, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiffs' motion for partial judgment on the agency record is denied; and that

---

**2.** 19 U.S.C. § 1675(f) states:
**(f) Correction of ministerial errors**
The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section [*i.e.,* administrative reviews].... As used in this subsection, the

term 'ministerial error' includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial. *See also* 19 C.F.R. § 353.28 (1991).

Pursuant to Rule 54(b) of the Rules of this Court, this is a final judgment as to Count I of the plaintiffs' complaint and there is no just reason for delay in entry of final judgment.