BÖWE-PASSAT, ET AL., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–01–00058

(Dated May 7, 1993)

*Barnes, Richardson & Colburn (Rufus E. Jarman, Jr.,* and *Ronald A. Oleynik)* for plaintiff.

*Stuart E. Schiffer,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Patricia L. Petty), Mary P. Michael,* Import Administration U.S. Department of Commerce for defendant.

OPINION

MUSGRAVE, *Judge:* Plaintiff Böwe-Passat ("Böwe") brings this action to supplement the record in this case and to remand this case to the Department of Commerce ("DOC") for reconsideration of its decision on the record as supplemented.

Following a request for an administrative review concerning German dry cleaning equipment, Commerce published a notice of initiation of the administrative review contested in this case on December 12, 1990. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed. Reg. 51742 (1990). In the underlying annual review proceeding, Böwe made a number of claims for direct expenses in the home market to reduce the Foreign Market Value ("FMV") of the merchandise under review, or to include he calculation of a level of trade ("LOT") adjustment. The expense categories involved this motion are Advertising, Order Entry and Control, Sales Department, Technical Publications, Traffic/Shipment Department, and finally Sales Related General, Administrative and Management Expenses.

On December 24, 1990, a questionnaire was forwarded to Böwe. In a letter accompanying the December 24, 1990 questionnaire, Commerce stated that "[a]ny submissions submitted in an untimely manner *will be rejected* and will not be considered part of our record" (emphasis in the original). *Administrative Record ("A.R.")* 4 at 1. The listed claims were

made in timely fashion in Böwe's questionnaire response dated March 1, 1991. The Department sent Böwe a so-called "deficiency letter" dated April 11, 1991 requesting further information and clarification of Böwe questionnaire response. Böwe supplied the requested additional information in a timely fashion. Böwe claims there was no reference in the deficiency letter to any of the expense categories at issue in this motion. *See DOC Letter of April 11, 1991, A.R. 10.* Rather, Böwe asserts, the deficiency letter alerted Böwe to insufficiencies regarding certain other claims for direct expense cost adjustments *(e.g.,* "home market sales office expenses") and requested further information with respect to those claims. *See id.* The Department claims that letter did refer to those categories by requesting to identify and quantify the expense categories and the elements of Böwe's proposed level of trade adjustment. *Defendant's Opposition to Plaintiffs' Motion to Supplement the Record and Remand* at 10 n. 7. The pertinent text of the April 11, 1991 letter follows:

> This concerns the antidumping finding on drycleaning machinery from Germany and your response dated March 1, 1991.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> 3. For the home market sales office expenses please separately identify and quantify the expense categories.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> 5. For each model sold in the United States please clarify and quantify the elements of your proposed level-of-trade adjustment.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

*A.R. 10.*

On August 12, 1991, Commerce published notice of its preliminary determination. 56 Fed. Reg. 38112. *A.R. 15.* In the preliminary determination, Commerce rejected Böwe's claim that certain expense categories should be treated as direct expenses. *Id.* at 38113. As noted above the parties disagree as to whether those categories were mentioned by Commerce in its April 11, 1991 deficiency letter. In Böwe's view, it complied with Commerce's additional request only to find that it had failed to adequately substantiate its expenses at the preliminary determination for lack of sufficient proof of items Commerce did not request by way of item five of its deficiency letter. Commerce asserts that it is not required to indicate insufficiencies in the submissions of parties to antidumping proceedings and in any event, item five constituted notice that all the categories at issue in this motion *(e.g.,* Advertising, Order Entry and Control) were insufficiently proven as of the issuance of the deficiency letter. Commerce argues that the tender of the compendium was nothing more than a belated attempt to satisfy Böwe's burden of proof.

Böwe requested a hearing the same day that the preliminary results were issued. Commerce held a hearing on October 23, 1991. *A.R. 14.* The domestic producer declined to attend. During the hearing, Böwe tendered supplementary documents at issue in this action in an attempt to

corroborate the previous responses in its questionnaire, that Böwe claims were not in the deficiency letter but that the Department now found to be deficient. *Plaintiff's Memorandum (on Administrative Review), Exhibit A.* The hearing examiner reserved the right to ignore any new information in Böwe's pre-hearing brief, including any new information brought into the hearing. *A.R. 18* at 5.

On December 26, 1991, Commerce published notice of its final results of administrative review. 56 Fed. Reg. 66838. *A.R. 22.* The Department held that Böwe had submitted *unsolicited factual information* in its pre-hearing brief dated October 9, 1991. *Id.* at 66389. The Department decided not to accept or consider the supplemental information, "whether characterized as supplementing, explaining or supporting previously submitted data or information * * *", because the information had been submitted after the time limit specified in 19 C.F.R. § 353.31 for the creation of the record.[1] *Id.*

19 C.F.R. § 353.31(a)(1) provides that

> Submissions of factual information for the Secretary's consideration *shall* be submitted not later than:
>
> *       *       *       *       *       *       *
>
> (ii) For the Secretary's final results of an administrative review under § 353.22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice or initiation of the review * * *.

(Emphasis added). Commerce contends that since the supplementary information was submitted by Böwe more than two months *after* the issuance of the preliminary determination, and more than 180 days after December 12, 1990, the date of publication of the notice of initiation of the review, the information contravened Commerce's regulations and therefore could be rejected. *Defendant's Opposition to Plaintiff's Motion to Supplement the Record and Remand* at 5–7.

Neither party contests that Commerce normally has the discretion to accept or reject untimely filed submissions such as those submitted in this action. Commerce routinely accepts and rejects untimely filed submissions depending on the circumstances of each case. What is in dispute is whether Commerce's rejection of Böwe's supplementary information in this case was reasonable or not, in light of the wide breadth of discretion normally afforded Commerce in applying its regulations. Indeed, Commerce argues that its discretion is absolute to reject untimely submitted information by reason of section 353.31. The Court, however, cannot reconcile the language of section 353.31 with Commerce's own practice regarding that section. The language is mandatory, yet Commerce applies the section as if it were discretionary, routinely admitting data after the deadlines. The Court is thus left to assess whether Commerce abused the wide discretion afforded to it in

---

[1] *Id.* The "record" is defined by statute as "a copy of all information presented to or obtained by [the agency] during the course of the administrative proceeding * * *." 19 U.S.C. § 1516a(2)(A) (1992).

enforcing the timing provisions of its regulations. In this case, the Court finds that the ITA acted arbitrarily and capriciously in rejecting Böwe's supplemental explanatory information. The Court bases its decision on the language of section 353.31, the ITA's own precedent, policy, and the narrow facts of this case.

The Court shall hold unlawful any determination, finding, or conclusion found * * * to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1) (1992). In determining whether to sustain the agency's construction of its regulations or the antidumping statute, the Court need not find Commerce's interpretation to be the only reasonable one, or even the one that the Court views as most reasonable. *See Zenith Radio Corp. v. United States,* 437 U.S. 443, 450 (1978); *ICC Industries, Inc. v. United States,* 812 F.2d 694 (Fed. Cir. 1987). "Substantial deference is granted to the agency in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law." *Chemical Products Corp. v. United States,* 645 F. Supp. 289, 291 (CIT 1986). This Court will sustain the agency's interpretation of a valid regulation if it "was reasonable and neither arbitrary nor in violation of the law." *Melamine Chemicals Inc. v. United States,* 732 F.2d 924, 933–34 (Fed. Cir. 1984).

The plain language of section 353.31 indicates that Commerce does not have the discretion to accept untimely information. Section 353.31(a) mandates that factual information "shall be submitted not later than" certain operative events or dates. Section 353.31(a)(2) provides for the submission of factual information to rebut, clarify or correct "at any time prior to the deadline provided in this section for submission of such factual information * * *." Section 353.31(a)(3) provides that the "Secretary will not consider in the final determination or the final results * * * any factual information submitted after the applicable time limit." Section 353.31(b)(2) concerning Questionnaire responses provides that the "Secretary normally will not consider or retain in the record of the proceeding unsolicited questionnaire responses, and in no event will the Secretary consider unsolicited questionnaire responses submitted after the date of publication of the Secretary's preliminary determination."

Yet Commerce does accept information despite these regulations. *See Roller Chain, Other Than Bicycle, from Japan* (Investigation A–588–028) 57 Fed. Reg. 56319, 56320 (November 27, 1992). Even the Department has had difficulty, from time to time, meeting the statutory deadlines of these proceedings. Commerce, by its own practice, has tempered the unconditional nature of the above regulations. Nonetheless, the burden on the party attempting to submit untimely information remains high indeed. In this instance, however, where the party fully cooperated and relied on Commerce's request for additional information, Commerce has decided not to accept the supplemental information.

Upon review of the questionnaires and responses, the Court finds that Böwe's response to Commerce's deficiency letter was reasonably calculated in good faith to comply with the demands of that letter. If Commerce did not so find, or if Commerce considered other information not in the deficiency letter insufficient, the only reasonable way Böwe could comply with the demands of the annual review would be for Commerce to signal to it how its diligent efforts were inadequate—especially since a deficiency letter was sent requesting specific information unrelated to the information the ITA ultimately held to be insufficient. In so finding, the Court does not reverse the burden of proof, which remains squarely with the plaintiff. On the other hand, the review process is bilateral and interactive. The party must be afforded a reasonable opportunity, however, to meet its burden and to satisfy evidentiary concerns known only by the ITA staff.

Moreover, as plaintiff points out, Commerce has accepted similar data in other situations. *See Plaintiff's Reply to Defendants' Response* at 3. Commerce has accepted information submitted after publication of preliminary results stating that "[the new information] simply clarifies information that is already on the record and does not constitute an untimely submission of new information." *Roller Chain, Other Than Bicycle, from Japan* (Investigation A–588–028) 57 Fed. Reg. 56319, 56320 (November 27, 1992); *See* 19 C.F.R. § 353.31(a)(2) ("Any interested party * * * may submit factual information to rebut, clarify, or correct factual information submitted by an interested party * * * at any time prior to the deadline provided in this section for submission of such factual information * * *.").

Indeed, Commerce has exhibited such flexibility in adjusting for more accurate or otherwise appropriate figures already in this action:

> Boewe [Böwe] claims that the Department made certain clerical errors that should be corrected, including omissions or errors involving options, miscellaneous expense deductions, sale dates, exchange rates, physical differences, and inventory carrying charges for ESP sales * * * We agree and have recalculated our results accordingly.

56 Fed. Reg. 66838, 66840. Those reasonable readjustments had the effect of reducing the preliminary finding of a 6.00 percent dumping margin down to a mere 0.64 percent—0.14 percent above the margin at which the Department considers the dumping to be *de minimis* and does not pursue enforcement of the claimed antidumping margin. Yet the ITA was steadfast in rejecting Böwe's compendium of supplementary information offered in good faith in its pre-hearing brief and, at the hearing itself, in order to rectify the Department's perceived inadequate support for the data previously supplied.

The Court recognizes the potential conflict of policies in these circumstances. The Commerce Department clearly cannot complete its work unless it is able at some point to "freeze" the record and make calculations and findings based on that fixed and certain body of information.

On the other hand, the antidumping and countervailing duty laws are designed to favor disclosure and cooperation. For example, a powerful tool in the hands of the Commerce Department to extract information from parties is 19 U.S.C. § 1677e(c) (1992), otherwise known as "best information available" or "BIA":

> In making their determinations under this subtitle, the administering authority and the [DOC] shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

This "best" information is almost uniformly disadvantageous to the party that did not provide the data requested, so there is a strong incentive to disclose. For example, in the Preliminary Review in this action, Commerce stated that "[s]ince one of the companies, Seco, failed to respond to our questionnaire, for Seco we used 6.00 percent as BIA, the highest rate in this review, which is higher than any of Seco's prior rates." 56 Fed. Reg. 38112, 38113. In contrast, Böwe cooperated fully, providing detailed responses in apparent good faith The Department opted not to conduct verification in Böwe's case, presumably based on the completeness and integrity of Böwe's submissions and its cooperation.

In the end, the proper administration of dumping laws is best ensured by "fair and accurate" determinations. *See NSK, Ltd. v. United States,* 16 CIT 745, 748, 798 F. Supp. 721, 724 (1992); *Industrial Quimica Del Nalon, S.A. v. United States,* 13 CIT 1055, 1060, 729 F. Supp. 103, 108 (1989). The Committee Report to H.R. 4784, regarding the Trade and Tariff Act of 1984, stated the following concerning amendment of the verification provisions of the Act: "The Committee * * * believes it essential for the proper enforcement of the laws that information used in determining annually the actual amount of any * * * antidumping duty to be assessed under outstanding orders is accurate to the extent possible." H.R. Rep. No. 725 at 43 (May 1, 1984). Commerce has frustrated the purpose of the antidumping laws by refusing the supplemental information offered by plaintiff in this case.

Another often competing goal of the Act was to promote the interest of administrative economy during reviews of antidumping orders. H.R. Rep. No. 725 at 22–23. At first blush, administrative economy would be well served by the strict enforcement of deadlines. In this case, however, the ITA position in this action would encourage Respondents to swamp the agency with documentation in support of respondent's claims, because respondents are not told and cannot know to what extent they have not provided sufficient documentation for a given claim. As noted above, the Department did send a deficiency letter in this case regarding some information; but the letter requested specific information not related to the vague request for information, the response to which the Department found to be deficient and that may well have led to the

antidumping determination that was 0.14 above the *de minimis* level. When Böwe was made aware of the Department's view of the deficiency, it offered the Department a compendium of documents providing detailed back-up support for the expense categories previously submitted that the Department now deemed insufficiently proven.

Böwe's compendium is not unlike the model-match clarifications that the Department allowed *after* the preliminary results in *Roller Chain, Other Than Bicycle, from Japan.* It "simply clarifies information that is already on the record * * *." *Id.,* 57 Fed. Reg. 56319, 56320. That is, Böwe's supplementary compendium does not purport to substitute or modify figures previously timely submitted for Commerce's calculations; it merely provides the information in a format that Commerce is more likely to accept. Thus, according to the ITA's own guidelines, the supplemental information "does not constitute an untimely submission of new information." *Id.*

The Department notes that this Court has observed that the "submission of detailed factual information at the pre-hearing brief stage of an administrative review is clearly untimely under any circumstances." *NSK, Ltd. v. United States,* 16 CIT 745, 749–50, 798 F. Supp. 721, 725 (1992). While that is a reasonable interpretation of 19 C.F.R. § 353.31(a) (1991), it does not address whether circumstances dictate that the "untimely" information be accepted nonetheless. In *NSK,* the information that was rejected was new data that contradicted plaintiffs previous, albeit mistaken, submission. In contrast, Böwe's supplementary information was tendered merely to corroborate claims and data previously timely submitted by Böwe.

The Department also cites *Win-Tex Products, Inc. v. United States,* 16 CIT 763, Slip Op. 92–142 at 5–6 (August 26, 1992) for the proposition that information submitted subsequent to the pre-hearing brief stage is untimely. In *Win-Tex,* however, the Court admonished the plaintiff for failing to exercise "diligence in seeking to include the proposed supplemental materials * * *" despite Commerce's *warning* that those specific supplemental materials might not already be considered included in the record. *Id.* In contrast, Böwe attempted throughout the underlying proceedings to supply Commerce with the information it needed to make an informed decision.

Likewise, the Department's reliance on *Asociacion Colombiana de Exportadores de Flores v. United States* is unwarranted. Although this Court upheld the rejection of untimely submitted information in that case, Commerce had sent *three* deficiency letters specifically requesting the information *and* had conducted verification. *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 13, 22–24, 704 F. Supp. 1114, 1123–24 (1989), *aff'd,* 901 F.2d 1089 (Fed. Cir. 1990), *cert. denied,* 498 U.S. 848, 111 S. Ct. 136 (1990) (holding that Commerce did not abuse its discretion in refusing to recalculate the margin when the "error made by ITA is attributable to plaintiffs' late submission of ambiguous information"). Commerce's solicitation of information falls far

short of that in the case at bar, even though as the *Asociacion Colombiana de Exportadores de Flores* Court noted, "[d]eficiencies in questionnaire response are not unexpected. ITA normally sends a deficiency letter in such situations in order to clarify its request." *Id. at 1122.*[2]

Defendant argues that Commerce is not required by statute or regulation to point out deficiencies in questionnaire responses. Similarly, it is well established that "plaintiffs have the burden of demonstrating to [Commerce] that they are entitled to a circumstance of sales adjustment for expenses directly related to sales." 19 U.S.C. § 1677b(a)(4)(B) (1992); *see Rhone Poulenc, S.A. v. United States,* 8 CIT 47, 64, 592 F. Supp. 1318, 1333 (1984). Even in *Rhone Poulenc,* however, verification was conducted and there was an open dialogue between the ITA and the party in which the ITA indicated that it sought more information regarding sales expenses. *See id.,* at 1333–35.

The legislative history indicates that circumstance-of-sale adjustments "should be permitted if they are reasonably identifiable, quantifiable, and directly related to the sales under consideration and if there is clear and reasonable evidence of their existence and amount." H.R. Rep. No. 317, 96th Cong., 1st Sess. 76 (1976). *See Defendant's Opposition to Plaintiff's Motion to Supplement the Record and Remand.* At least as far as "circumstance-of-sale" adjustments are concerned, the proof must be established to the satisfaction of the administering authority * * *." 19 U.S.C. § 1677b(a)(4)(B). It is not possible to know the level of detail needed to satisfy the DOC's requirement for a particular cost adjustment when the DOC is silent. This is especially true where the DOC chose not to conduct verification, as in the matter at bar. The parties must be given a *reasonable* opportunity to satisfy their burden, for this adjustment or for the others at issue in this case.

Although item five of the DOC deficiency letter of April 11, 1991 did indicate the need for more level of trade information, the deficiency letter is only part of a procedure which, when fairly applied, is reasonably well calculated to obtain accurate results with reasonable fairness to all parties. This procedure may includes questionnaire, response, deficiency letters(s), response(s), verification and hearing. Böwe, in its response to the April 11, 1991 deficiency letter did "quantify and clarify" level of trade information, breaking it down into categories even though the deficiency letter did not specify any category that was deficient. *See A.R. 10.* When Commerce found in the preliminary determination that what Commerce had originally requested was insufficient, Böwe diligently presented further breakdowns for the figures that Commerce had found to be insufficiently substantiated. Commerce rejected that support documentation.

---

[2] The defendant also cited another clerical error case, *Tehnoimportexport v. United States,* 766 F. Supp. 1169, 1178 (CIT 1991). The case centered on the reasonableness of the Commerce Department's interpretation as to when it would, and when it would not, accept untimely information to correct a clerical error. Unlike this case verification had taken place and the corrections were submitted to Commerce a mere eleven days before the issuance of the final determination.

In the case at bar, the ITA would have this Court endorse an investigation where the ITA sent out a general questionnaire and a brief deficiency letter, then effectively retreated into its bureaucratic shell, poised to penalize Böwe for deficiencies not specified in the letter that the ITA would only disclose after it was too late, *i.e.,* after the preliminary determination. This predatory "gotcha" policy does not promote cooperation or accuracy or reasonable disclosure by cooperating parties intended to result in realistic dumping determinations. Rather, this behavior encourages parties to front-load investigations with all manner of unnecessary information to back up their claims. The ITA's behavior was all the more unreasonable in this case because Böwe was misled into believing that it had satisfied its burden regarding certain expenses by the absence of specific mention or concern for those items in the deficiency letter Commerce did decide to issue.

In conclusion, based on and limited to the specific circumstances of this case, the Court finds that the Department of Commerce enforced its regulations in an arbitrary and capricious way in refusing to accept the compendium of information that plaintiff tendered to support its expense claims. Commerce's decision was not based on substantial evidence or otherwise in accordance with the law. Accordingly, this matter is remanded to the ITA so that the ITA may revisit its dumping margin of 0.64 percent, based on consideration of the record as amended by the compendium tendered by plaintiff.

The ITA shall report back to the Court with the results of its redetermination in accordance with this opinion within 90 days. Böwe will thereafter have 15 days in which to file a brief on the remand results with the Court. Defendant and the domestic producer shall file a reply within 15 days after receipt of Böwe's brief.