PERSICO PIZZAMIGLIO, S.A., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND LACLEDE STEEL CO., DEFENDANT-INTERVENOR

Court No. 92–11–00783

(Dated April 14, 1994)

*Law Offices of Royal Daniel, III (Royal Daniel, III* and *Jeri Beth Katz),* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Cynthia B. Schultz);* Office of the Chief Counsel for Import Administration, United States Department of Commerce *(Tom Ehr),* of counsel, for defendant.

### MEMORANDUM OPINION

GOLDBERG, *Judge:* This matter comes before the court on plaintiff's motion, pursuant to USCIT Rule 56.2, for judgment on the agency

record. Plaintiff, Persico Pizzamiglio, S.A. ("Persico"), challenges the decision of the United States Department of Commerce ("Commerce") to use best information available ("BIA") for determining the dumping margin established in *Final Determination of Sales at Less Than Fair Value: Circular Welded Non-Alloy Steel Pipe from Brazil,* 57 Fed. Reg. 42,940 (Sept. 17, 1992) *("Final Determination").* Additionally, Persico challenges Commerce's reliance upon unverified petition data as BIA. Commerce and defendant-intervenor, Laclede Steel Co. ("Laclede"), argue that resorting to BIA was appropriate, and that Commerce properly used unverified petition data to establish the dumping margin for Persico. The court finds that substantial evidence exists in the record to support Commerce's use of BIA, and that Commerce acted in accordance with law when it chose unverified petition data as BIA. The court therefore denies Persico's motion for judgment on the agency record, and sustains Commerce's final determination in all respects.

## BACKGROUND

Commerce initiated its investigation of circular welded nonalloy steel pipe from Brazil on October 15, 1991. *Initiation of Antidumping Duty Investigations: Circular Welded Non-Alloy Steel Pipe From Brazil the Republic of Korea, Mexico, Romania, Taiwan, and Venezuela,* 56 Fed. Reg. 52,528 (Oct. 21, 1991) *("Initiation of AD Investigations").* The scope of Commerce's investigation covered pipes and tubes that are circular welded non-alloy steel, of circular cross-section, not more than 406.4 millimeters (i.e. 16 inches) in outside diameter. *Id.* Persico was the only Brazilian company subject to Commerce's investigation, because Persico accounted for over 60 percent of all exports of the subject merchandise to the United States during the period of investigation ("POI"), which spanned from April 1, 1991 to September 30, 1991. Commerce provided Persico with an antidumping questionnaire seeking information about Persico's business activities during the POI. The questionnaire was divided into three sections. Persico submitted a response for Section A on December 20, 1991, and submitted responses to Sections B and C on January 13, 1992.

Petitioners alleged on February 24, 1992, that during the POI, Persico had sold the subject merchandise in the home market at prices below cost of production ("COP"). In response to these allegations, on March 19, 1992, Commerce issued Persico a COP and constructed value ("CV") questionnaire. Persico's response to this questionnaire was originally due to be filed with Commerce by April 16, 1992; Commerce granted Persico an extension, however, to May 1, 1992.

On April 28, 1992, Commerce published its preliminary determination and postponement of final determination. *Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Circular Welded Non-Alloy Steel Pipe From Brazil,* 57 Fed. Reg. 17,883 (Apr. 28, 1992). The preliminary determination did not address the issue of home market sales below cost of production

because Persico had not yet responded to the COP and CV questionnaire as of the date of publication of this notice in the Federal Register. Commerce calculated a preliminary duty margin for Persico of 2.66 percent *ad valorem*. Persico responded to the COP and CV questionnaire on May 1, 1992. Commerce then sent Persico a deficiency letter on June 11, 1992, informing Persico of "significant deficiencies" in its response to the COP and CV questionnaire. P.R. Doc. 119. Persico responded to the issues addressed by Commerce in its deficiency letter on June 18, 1992.

Commerce conducted verification of Persico's responses to the questionnaires from June 28, 1992 through July 1, 1992 at Persico's headquarters in Brazil. The scope of cost verification included Persico's submitted COP/CV responses and difference-in-merchandise data for the circular welded non-alloy steel pipe sold in the home market and in the United States during the POI. During cost verification, Commerce noted eight issues that it thought might require further consideration. *Cost Verification Report,* P.R. Doc. 134 at I.

During price verification Commerce discovered that, in its response, Persico did not include information about home market sales of mechanical tubing and structural pipe, although both classes of merchandise could be included within the scope of Commerce's investigation, depending upon their use. P.R. Doc. 135 at 10. Commerce defined the scope of its investigation as pipes and tubes that are "generally known as standard pipe, though they may also be called structural or mechanical tubing in certain applications." *Initiation of AD Investigations,* 56 Fed. Reg. at 52,529. The applications Commerce referred to are "the low pressure conveyance of water, steam, natural gas, air, and other liquids and gases in plumbing and heating systems, air conditioning units, automatic sprinkler systems, * * * other related uses * * * [and] light load-bearing and mechanical applications, such as for fence tubing." *Id.* Commerce ultimately concluded that neither mechanical tubing nor structural pipe would be used for product matching because Persico did not export this merchandise to the United States.

Commerce also discovered a discrepancy between the amount of export sales to the United States that Persico reported in its response, and the amount of such sales indicated in Persico's accounting records. Specifically, Commerce selected two export sales from the month of July 1992 to determine whether they were reported in Persico's response for U.S. sales. Purchase Order 654817 had not been reported. P.R. Doc. 135 at 12. Commerce subsequently determined that it should have been reported. The second purchase order that Commerce selected had been canceled by an internal memo. *Id.* at 12–13. Consequently, Commerce selected two additional export sales from July; upon examination, each of these were also determined to have been canceled. *Id.* at 13. Commerce then requested that Persico generate a report of all its export sales to the United States during the POI. This report listed a different amount of standard pipe sold in the United States than the amount Persico had previously reported to Commerce in its questionnaire response.

The report showed that as many as one-third of Persico's U.S. sales during the POI may not have been reported. *Final Determination,* 57 Fed. Reg. at 42,941. Persico explained that certain canceled sales were later re-entered with different purchase order numbers. P.R. Doc. 135 at 13. Commerce could not confirm this, and could not adjust the total sales figure listed in the generated report to account for this assertion. As a result, Commerce could not verify Persico's questionnaire response regarding its total quantity of sales to the United States during the POI.

This dilemma concerning U.S. sales verification consumed a substantial amount of the three days Commerce had allocated for verification. Because of time constraints, Commerce was unable to verify Persico's methodology for converting net home market prices to a theoretical weight basis. *Id.* at 15. Conversion is necessary because Persico sells pipe in the home market on an actual weight basis, while it sells pipe in the United States on a theoretical weight basis. Conversion allows Commerce to compare home market prices with United States prices. In addition, Commerce had enough time to examine supporting sales documentation for only one U.S. sale and one home market sale The delays involved led Commerce to the conclusion that:

> Because of the difficulty we encountered throughout the verification when trying to verify the more general information (including total volume and value and completeness), we were unable, in the time allotted, to conduct a complete verification of any of the sales traces (including the charges and adjustments), or to return to the issue of the conversion from an actual weight basis to a theoretical weight basis.

*Id.* at 18. Furthermore, Commerce requested documentation for Persico's calculation of home inland freight expenses. Persico never complied with this request during verification. *Id.*

After verification, Richard W. Moreland[1] issued an internal Commerce Department memorandum to Francis J. Sailer,[2] discussing the events of verification. P.R. Doc. 144 at 4–5. Citing the difficulty that Commerce encountered during verification, and the substantial lack of verification of Persico's response in support for his recommendation, Mr. Moreland recommended that BIA be used for determining Persico's final dumping margin. It is evident from the record that Mr. Moreland was not present at verification.

On September 17, 1992, Commerce issued its final determination, establishing an *ad valorem* dumping margin for Persico of 103.38 percent for the subject merchandise. This rate was computed using a "cooperative respondent" BIA rate, which was composed of the *average* of the calculated margins in the petition. *Final Determination,* 57 Fed. Reg. at 42,942. Persico now challenges that result before this court.

---

[1] Mr. Moreland is the Director of the Office of Antidumping Investigations, U.S. Department of Commerce, International Trade Administration.

[2] Mr. Sailer is the Deputy Assistant Secretary for Investigations, U.S. Department of Commerce, International Trade Administration.

DISCUSSION

According to statute, the court must affirm Commerce's determination unless it is "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is that which a reasonable mind may accept as sufficient to support a conclusion. *Matsushita Elec. Indus. Co. v. United States,* 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The court will thus affirm Commerce's determination if it finds that a reasonable mind could extract the same conclusion from all of the evidence presented in the record. *Negev Phosphates, Ltd. v. United States Dep't of Commerce,* 12 CIT 1074, 1077, 699 F. Supp. 938, 942 (1988).

A. *Commerce's Decision to Use BIA is Substantially Supported by the Record:*

In its final determination, Commerce stated that it had "determined that the questionnaire responses of the respondent provide an inadequate basis for estimating dumping margins. * * * [F]or the information we examined at verification, the omissions from and inaccuracies in the responses were so material as to make the responses inherently unreliable, compelling the Department to use BIA." *Final Determination,* 57 Fed. Reg. at 42,941. The court finds that there is substantial evidence in the record to support this conclusion.

At verification, Commerce discovered that Persico did not submit any data regarding home market sales of mechanical tubing or structural pipe in its questionnaire response, although certain sales of these goods may have been included within the scope of Commerce's investigation. P.R. Doc. 135 at 10. Persico stated that it did not include mechanical tubing or structural pipe sales data in its response because these goods are "inappropriate for use in conducting fluids." *Id.* This statement ignores other applications for which mechanical tubing and structural pipe could be used, applications that fall under the scope of Commerce's investigation. In fact, Persico later conceded that mechanical tubing might be used in construction for fence tubing. Although Persico did not know whether any of its customers used mechanical pipe for such applications, it offered no other evidence supporting its claim that its sales of mechanical tubing or structural pipe were outside the scope of Commerce's investigation. *Id.*

The court finds that Persico's response to Commerce's request for all home market sales of the subject merchandise during the POI was incomplete. The fact that Commerce later recognized that the requested information would not be used in product matching is irrelevant to the court's analysis. Commerce requested information which the respondent should have *fully* provided upon request. "It is Commerce, not the respondent that determines what information is to be provided * * *." *Ansaldo Componenti, S.p.A v. United States,* 10 CIT 28, 37, 628 F. Supp. 198, 205 (1986). If the court were to hold otherwise, "alleged unfair trad-

ers would be able to control the amount of antidumping duties by selectively providing [Commerce] with information." *Olympic Adhesives, Inc. v. United States,* 8 Fed. Cir. (T) 69, 76, 899 F.2d 1565, 1572 (1990). Persico should have conclusively reported to Commerce whether any of its home market sales of mechanical tubing or structural pipe were within the scope of the investigation; any ambiguity should have been resolved through consultation with Commerce before the time Persico's response was due. If certain categories of merchandise were determined to be within the scope of Commerce's investigation, Persico should have supplied Commerce with information regarding sales of such merchandise. Because Persico did not conclusively state the amount, if any, of its home market sales of mechanical tubing or structural pipe that were included within the scope of Commerce's investigation, Commerce could not verify Persico's home market sales of the subject merchandise. Commerce cannot be left to the largesse of a party to supply information. *Id.,* 899 F.2d at 1571.

At verification, Commerce was also unable to verify Persico's response for its total U.S. sales of the subject merchandise; in fact, Commerce discovered the possibility that not all U.S. sales of the subject merchandise during the POI were included in Persico's questionnaire response. As noted, Commerce found that Purchase Order 654817 was not recorded in Persico's response. Commerce then examined the commercial invoice for this purchase order and concluded that Persico should have reported it as a U.S. sale during the POI. P.R. Doc. 135 at 12. Because of the discrepancy between the amount of U.S. sales stated on the report generated at verification and the amount stated in Persico's response to Commerce's questionnaire, Commerce could not verify Persico's response pertaining to the quantity of U.S. sales of the subject merchandise.

The court notes that the controlling statutory provision states in pertinent part:

### (b) Verification

The administering authority shall verify all information relied upon in making—

(1) a final determination in an investigation * * *. If the administering authority is unable to verify the accuracy of the information submitted, it *shall use* the *best information available* to it as the basis for its action, which may include, in actions referred to in paragraph (1), the information submitted in support of the petition.

### (c) Determinations to be made on best information available

In making their determinations under this subtitle, the administering authority and the Commission *shall,* whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, *use the best information otherwise available.*

19 U.S.C. § 1677e (1988) (emphasis added). According to this statute, Commerce *shall* use BIA if: it cannot verify information submitted by a respondent; a respondent refuses or is unable to respond to Commerce's questions in a timely manner or in the form required by Commerce; or, a respondent significantly impedes Commerce's investigation.[3] *See NSK Ltd. v. United States,* 16 CIT 745, 751, 798 F. Supp. 721, 726 (1992). In this case, the court finds that Commerce's use of BIA was in accordance with law. The record indicates that Commerce could not verify substantial portions of Persico's response. Most notably, Commerce could not verify the quantity of Persico's U.S. sales during the POI, or Persico's methodology used to convert actual weight prices to theoretical weight prices. Because Commerce could not verify the accuracy of the information submitted by Persico, § 1677e(b) authorizes Commerce's use of BIA.

Furthermore, Persico refused to supply Commerce with requested documentation for home market foreign inland freight expenses. Persico's response to Commerce's inquiry into home market sales was similarly incomplete. These facts also justify the use of BIA as a refusal or inability to produce information requested in a timely manner and in the form required. Our appellate court has previously held that "if the responses provided to an information request are only partially complete in that not all questions requiring a response are answered or answers to questions do not fully or accurately supply the information requested, partial completeness * * * may justify resort to the best information rule." *Olympic Adhesives,* 8 Fed. Cir. (T) at 76, 899 F.2d at 1572. In this case, as demonstrated above, many of Persico's answers to Commerce's questionnaire were either incomplete or inaccurate, thus justifying resort to BIA.

Persico does not argue any of these factual points. Instead, Persico argues that Commerce was incorrect to use BIA because it relied on Mr. Moreland's memorandum in its decision to resort to BIA. Persico claims that Mr. Moreland's memorandum portrays a totally inaccurate account of the events Commerce encountered at verification. Persico urges that because Mr. Moreland did not attend verification, his memorandum cannot be considered as part of the record, and that Commerce should have ignored it in deciding to use BIA. Persico seems to imply that if Mr. Moreland's memorandum were not included in the record, Commerce would not have decided to use BIA. Therefore, according to

---

[3] Consistent with 19 U.S.C. § 1677e, federal regulations provide that:

    (a) *Use of best information available.* The Secretary will use the best information available whenever the Secretary:

      (1) Does not receive a complete, accurate, and timely response to the Secretary's request for factual information; or

      (2) Is unable to verify, within the time specified, the accuracy and completeness of the factual information submitted.

    (b) *What is best information available.* The best information available may include the factual information submitted in support of the petition or subsequently submitted by interested parties, as defined in paragraph (k)(3), (k)(4), (k)(5), or (k)(6) of § 353.2. If an interested party refuses to provide factual information requested by the Secretary or otherwise impedes the proceeding, the Secretary may take that into account in determining what is the best information available.

19 C.F.R. § 353.37 (1993).

Persico, Commerce's decision should be vacated. *Plaintiff's Memorandum of Law In Support of Motion for Judgment on the Agency Record ("Persico's Brief")* at 3. Persico offers no case law to support this novel argument.

Alternatively, Persico argues that Commerce had a duty to devote a longer period of time for verification of Persico's response. Persico argues that the reason why Commerce could not verify its response was because Commerce did not devote enough time to the verification process. *Persico's Brief* at 4–6. Persico thus faults Commerce, rather than its own defective response, for Commerce's inability to verify portions of Persico's response. The court finds neither of these arguments persuasive. Each will be addressed in turn.

### 1. Mr. Moreland's memorandum

The court notes that Mr. Moreland's memorandum is not essential to support Commerce's decision. All the evidence that Commerce required to support its decision in this case is contained within the verification reports.[4] Persico's argument as it pertains to Mr. Moreland's memorandum thus appears groundless. A post-verification summary memorandum of events that occurred at verification is not the basis for Commerce's decision to employ BIA. The memorandum merely reflects the *facts* which are themselves the basis for using BIA. Persico's attempt to elevate the importance of the post-verification memorandum in this case is inaccurate and unfounded. Because the court finds adequate support in the verification reports for employing BIA, the court finds Persico's argument pertaining to Mr. Moreland's memorandum unpersuasive.

### 2. Duration of verification

Persico argues that Commerce improperly devoted insufficient time for verification, and therefore, Commerce is to blame for its failure to perform a complete verification of Persico's response. Persico further argues that because Commerce is at fault for the lack of verification, BIA should not be used in this case. In support of this position, Persico cites the *Antidumping Manual* published by the U.S. Department of Commerce, International Trade Administration, for the proposition that Commerce's guidelines anticipate conducting price verification for five days, not including a one-day tour of the plant.[5] In this case, Commerce conducted verification for three days, excluding one day for a tour of the

---

[4] This is not to say that Mr. Moreland's memorandum is inaccurate. Quite to the contrary, Mr. Moreland's memorandum appears to be an accurate summary of the events and difficulties Commerce encountered at verification. In the section of Mr. Moreland's memorandum entitled "Recommendation", Mr. Moreland states:

Due to the significant discrepancies in the data submitted by Persico, we are unable to determine the total volume of Persico's U.S. sales during the POI. In addition, we cannot determine the completeness of Persico's reported home market sales, which is necessary to properly conduct the cost of production analysis. Our ability to calculate a margin for Persico is further hampered by the fact that sales-specific information remains unverified. Therefore, we recommend basing Persico's final determination margin on BIA.

P.R. Doc. 144 at 4.

[5] U.S. Department of Commerce, International Trade Administration, *Antidumping Manual,* Ch. 13 at 1 (Aug. 1991).

plant. Again, Persico does not offer any legal precedent in support of its argument against use of BIA in this case.

Ironically, on the same page of the *Antidumping Manual* that Persico cites for the proposition that Commerce anticipates a five-day verification, Commerce also states that "[d]ue to the number of investigations we are presently conducting, our current practice is to allow 3 working days for overseas verification * * *." Commerce's policy seems to favor five-day overseas verifications, but due to the current number of investigations and associated time constraints, Commerce has decided to conduct overseas verifications in three days. There is no statutory mandate as to how long the process of verification must last. Rather, Commerce is afforded discretion when conducting a verification pursuant to 19 U.S.C. § 1677e(b). The court notes that:

> [I]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation * * *. [A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44 (1983). The court holds that Commerce's general practice in conducting overseas verifications is reasonable, considering the time and resource constraints that the agency faces. Additionally, it appears from a review of the record that Commerce would have completed verification had it not been for Persico's defective response regarding U.S. sales of the subject merchandise. Therefore it is Persico, not Commerce, which is at fault for the lack of verification of Persico's response. Persico's attempt to avoid BIA by placing blame for the lack of verification on Commerce is thus without merit.

B. *Commerce's Reliance Upon Petition Information as BIA:*

Persico argues that Commerce erred by using unverified petition information as BIA. Instead, Persico argues that Commerce should have at least relied upon information from the portions of Persico's response that Commerce had verified. The court rejects this argument.

A similar argument was rejected by the court in *Rhone Poulenc, Inc. v. United States,* 13 CIT 218, 710 F. Supp. 341 (1989), *aff'd,* 8 Fed. Cir. (T) 61, 899 F.2d 1185 (1990); *see also Chinsung Indus. Co. v. United States,* 13 CIT 103, 705 F. Supp. 598 (1989)(on similar facts, the court held that Commerce's disregard for verified information was in accordance with law). In *Rhone Poulenc,* Commerce conducted an administrative review of a preexisting dumping order, and issued the respondent a questionnaire pertaining to the review period. Commerce summarily rejected the respondent's entire submission because it was not in Commerce's required format, and because the respondent did not provide certain requested data. As a result, Commerce decided to use BIA. The respondent argued before this court that Commerce should only use BIA for missing information, and should not use BIA *in toto*. In upholding Com-

merce's actions, the court stated that "[t]he Court is unpersuaded by plaintiff's argument for a rule prohibiting Commerce from rejecting any submission that is 'substantially complete.' Such a substantiality test might place control of the results of an administrative review in the hands of respondents by permitting them selectively to provide information requested." *Id.* at 224, 710 F. Supp. at 346.

This court agrees with the view expressed by the court in *Rhone-Poulenc.* If the court were to accept Persico's argument, such result might encourage respondents to analyze the information Commerce would employ as BIA should that agency ignore a questionnaire response for being unresponsive or incomplete. Presumably, the respondent would then selectively disclose only that information which would decrease a dumping margin calculated from BIA. Under this framework, a respondent would never disclose any information that would actually raise the dumping margin that would otherwise be established by employing BIA. In this way, it would be in respondents' best interest to only partially respond to Commerce's inquiry. In every situation where this type of analysis would occur, the final dumping margin established by Commerce would thus be understated. By allowing Commerce to reject a submission *in toto,* the court encourages full disclosure by the respondent, because only full disclosure will lead to a dumping margin lower than that established by employing BIA.

In this case, the court finds no error in Commerce's use of the petitioners' information. The court notes that "Commerce has broad discretion in determining what constitutes the BIA in a given situation." *Krupp Stahl A.G., v. United States,* 17 CIT 450, 453, 822 F. Supp. 789, 792 (1993); *see also Allied-Signal Aerospace Co. v. United States,* 996 F.2d 1185, 1191 (Fed. Cir. 1993) ("[B]ecause Congress has 'explicitly left a gap for the agency to fill' in determining what constitutes the best information available, [Commerce's] construction of the statute must be accorded considerable deference."). Presently, once Commerce decided that it should resort to BIA for its margin determination, only one source for BIA was available; because Persico was the only respondent in this investigation, Commerce had no source of information other than the petition. Additionally, unlike cases involving administrative review, there was no prior data regarding Persico which Commerce could use as BIA. Thus, Commerce's only choice was to rely upon the petition information. Finally, the court notes that 19 U.S.C. § 1677e(b) specifically states that Commerce may rely upon petition information as BIA in a final determination. Commerce's choice for BIA in this case is thus in accordance with the law.

Throughout its brief, Persico continually mentions that Commerce found it to be a cooperative respondent. Persico argues that Commerce should account for Persico's cooperation before using BIA; specifically, Persico argues that Commerce should not use BIA against cooperative respondents. This argument neglects the fact that even cooperative respondents can submit deficient or unverifiable information, which

would justify using BIA. Neither sections 1677e(b) nor (c) distinguish between cooperative and uncooperative respondents. Those sections simply mention the situations in which Commerce is justified in using BIA. A plain reading of the statute demonstrates that BIA can be used against a cooperative respondent, for they are not exempted from the application of 19 U.S.C. § 1677e.

Moreover, Commerce actually did account for Persico's cooperation. Finding Persico to be a cooperative respondent, Commerce averaged all of the different margins in the petition, and used this average in its final determination. Significantly, Commerce refused to impose the highest margin in the petition, which is its chosen methodology when dealing with uncooperative respondents.[6] In sum, the court finds Commerce's chosen methodology is in accordance with law, and rejects what is essentially Persico's attempt to exact greater leniency from Commerce than what has already been bestowed. Persico's argument is therefore rejected.

CONCLUSION

Commerce's use of BIA in its investigation is supported by substantial evidence in the record, and is in accordance with law. Its choice of using petition information as BIA is also in accordance with law. For the foregoing reasons, Commerce's decision is affirmed in all respects, and plaintiff's motion is denied. Judgment will be entered accordingly.

---

[6] Commerce seems to favor reserving the highest possible margin BIA for uncooperative respondents. *See Allied-Signal Aerospace Co. v. United States,* 996 F.2d 1185, 1190–91 (Commerce's treatment of uncooperative respondents "results in the selection of the most adverse margin possible as the best information available.").