NSK LTD. and NSK Corporation,
Plaintiffs,

v.

UNITED STATES, Defendant,

The Torrington Company; Federal–Mogul Corporation, Defendant–Intervenors.

No. 91–08–00578.

United States Court of International Trade.

June 17, 1993.

Coudert Brothers, Robert A. Lipstein, Matthew P. Jaffe and Nathan V. Holt, Washington, DC, for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: Stephen J. Claeys, Atty. Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Patrick J. McDonough, Geert De Prest, John M. Breen and Amy S. Dwyer, Washington, DC, for defendant-intervenor The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, Washington, DC, for defendant-intervenor Federal–Mogul Corp.

## *OPINION*

TSOUCALAS, Judge:

Plaintiffs, NSK Ltd. and NSK Corporation ("NSK"), move pursuant to Rule 56.1 of the Rules of this Court for partial judgment on the agency record as to Counts II, III, IV, V, VI and IX of its complaint claiming that the Department of Commerce, International Trade Administration ("Commerce") (1) committed various clerical errors, (2) improperly failed to exclude bearings not subject to the antidumping duty orders from this review, (3) improperly classified NSK's after-market sales to original equipment manufacturers ("OEMs") at the same level of trade as other sales to OEMS, and (4) improperly failed to compare sales at comparable quantities.[1]

The administrative determination under review is Commerce's final results in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Anti-dumping Duty Administrative Reviews ("Final Results")*, 56 Fed.Reg. 31,754 (1991). Substantive issues raised by NSK in the underlying administrative proceeding were addressed by Commerce in the Issues Appendix to *Antifriction Bearings (Other Than Tapered Roller Bear-*

*ings) and Parts Thereof From the Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Issues Appendix")*, 56 Fed.Reg. 31,692 (1991).

## *Background*

On June 11, 1990, the ITA initiated an administrative review of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews*, 55 Fed.Reg. 23,575 (1990). NSK participated in this review. *Id.*

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts thereof from Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Antidumping Duty Administrative Reviews*, 56 Fed.Reg. 11,186 (1991).

On July 11, 1991, Commerce published its Final Results in this proceeding. *Final Results*, 56 Fed.Reg. 31,754.

## *Discussion*

▌▌▌ In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.

---

1. NSK has decided not to pursue Count VIII of its complaint. Counts I and VII were previously contested by plaintiffs in their prior partial motions for judgment on the agency record and these issues were decided by the Court. *See NSK*

*Ltd. v. United States*, 16 CIT ——, 798 F.Supp. 721 (1992), aff'd, 996 F.2d 1236 (Fed.Cir. May 18, 1993); *NSK Ltd. v. United States*, 17 CIT ——, 819 F.Supp. 1096, Slip Op. 93–50 (April 2, 1993).

126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir. 1990).

### 1. *Clerical Errors*

Plaintiffs contest several clerical errors in the Final Results.

### A. *Manufacturer Codes*

First, plaintiffs claim that Commerce erred in failing to correct NSK's error in coding the identity of its suppliers of bearings sold by NSK in the home market. Subsequent to its original computer tape which contained manufacturer codes, NSK submitted a revised computer tape to correct any errors in the initial tape. In this review, Commerce used manufacturer codes supplied by NSK in this *revised* computer tape to select the proper foreign market sales for comparison with NSK's United States sales. NSK now asserts that the manufacturer codes submitted in the revised computer tape are also incorrect and further claims that Commerce should have either accepted manufacturer codes revised for the second time from NSK, or alternatively, not considered the manufacturer of bearings in comparing United States and foreign market sales.

■ According to 19 U.S.C. § 1675(f) (1988 & Supp.1993), Commerce is afforded the discretion to correct clerical errors in final determinations "within a reasonable time after the determinations are issued." Commerce has promulgated a regulation which sets time limits on the submission of factual information in administrative reviews. The regulation states in pertinent part:

§ 353.31 **Submission of factual information.**

(a) *Time limits in general.* (1) Except as provided in paragraphs (a)(2) and (b) of this section, submissions of factual information for the Secretary's consideration shall be submitted not later than:

(i) For the Secretary's final determination, seven days before the scheduled date on which the verification is to commence;

(ii) For the Secretary's final results of an administrative review under § 353.22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review; ...

. . . .

(2) Any interested party ... may submit factual information to rebut, clarify, or correct factual information submitted by an interested party ... at any time prior to the deadline provided in this section for submission of such factual information or, if later, 10 days after the date such factual information is served on the interested party. . . .

(3) The Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit. . . .

19 C.F.R. § 353.31(a) (1991).

■ Commerce is not required to correct a respondent's errors when a respondent reported erroneous data but failed to timely correct it. *See NSK Ltd. v. United States* ("*NSK I*"), 16 CIT ——, ——, 798 F.Supp. 721, 725 (1992), *aff'd*, 996 F.2d 1236 (Fed.Cir. May 18, 1993); *see also Sugiyama Chain Co. v. United States*, 16 CIT ——, ——, 797 F.Supp. 989, 996 (1992). To do this would put an undue burden upon Commerce "and litigants might tend to become slovenly with submitted data." *Sugiyama*, 16 CIT at ——, 797 F.Supp. at 995.

Commerce cannot wait forever for a respondent to submit corrected data. NSK was given one opportunity to change its submission of erroneous manufacturer codes. Apparently, however, the revised tape submitted by NSK to correct its data still contained erroneous manufacturer codes. Although NSK had until Commerce's publication of its preliminary determination on March 15, 1991 to request Commerce to correct the manufacturing codes, NSK failed to review its computer tape until afterwards. NSK claims that it "had no reason to examine its December 14, 1990 computer tape

before June 23, 1991, the date on which the Department released its final computer program." *Memorandum of Points and Authorities in Support of Motion for Partial Judgment on the Agency Record ("Plaintiffs' Memorandum")* at 19. To the contrary, NSK cannot shift its burden to Commerce due to its own carelessness.

■ It is the respondent's obligation to supply Commerce with correct information. *See Chinsung Indus. Co. v. United States,* 13 CIT 103, 106, 705 F.Supp. 598, 601 (1989). If, however, a clerical error is "so egregious and so obvious that the failure to correct it was an abuse of discretion and undermined the interests of justice, the Court may remand the case to the ITA for adjustment of the calculations." *Tehnoimportexport v. United States,* 15 CIT 250, ——, 766 F.Supp. 1169, 1178 (1991). Furthermore, "an error in original information submitted by a respondent must be obvious from the administrative record in existence at the time the error is brought to the ITA's attention." *NSK I,* 16 CIT at ——, 798 F.Supp. at 725.

■ In this case, the error was not obvious and Commerce was justified in relying upon NSK's "corrected" data.

NSK alternatively claims that if NSK's second corrected information is not accepted, then Commerce should be ordered by the Court to disregard manufacturer codes when comparing NSK's United States and foreign market sales.

NSK is erroneous in suggesting that Commerce should be required to disregard the codes altogether. When selecting which foreign market value sales to use for comparison to U.S. sales, 19 U.S.C. § 1677b(a)(1) (1988) grants Commerce the authority to use foreign market value sales of "such or similar merchandise."

Thus, in this case, it is within Commerce's discretion to use manufacturer codes contained in NSK's revised computer tape and, therefore, its decision was reasonable and is hereby affirmed.

B. *Water Pump Integral Shaft Bearings*

■ NSK claims that Commerce committed a second clerical error by failing to correct NSK's error in assigning the wrong antidumping duty rate to water pump integral shaft bearings. During the review period, NSK sold water pump integral shaft bearings in the United States. NSK claims that it failed to report certain water pump bearings as integral shaft bearings. In an effort to correct its previously submitted data, NSK submitted new information after the publication of the preliminary results to support its allegation that certain water pump bearings were integral shaft bearings. *Plaintiffs' Memorandum* at 7–8.

In *NSK I,* plaintiffs' first partial motion for judgment on the agency record in this case, NSK similarly alleged a clerical error and in its pre-hearing brief NSK provided new information on the production process for the roller bearings at issue, as well as corrected cost of production information, in an attempt to convince Commerce to correct the alleged error. *NSK I,* 16 CIT ——, 798 F.Supp. 721.

In that case, the Court stated that the "submission of detailed factual information at the pre-hearing brief stage of an administrative review is clearly untimely under any circumstances." *Id.* at ——, 798 F.Supp. at 725.

In the case at hand, plaintiffs once again have provided too little, too late. Therefore, Commerce was justified in rejecting NSK's untimely new information and this issue is hereby affirmed.

C. *Home Market Part Numbers*

Finally, NSK claims that Commerce committed a clerical error on home market part numbers. At NSK's request, Commerce corrected NSK's submission of home market part numbers which allegedly reported incorrect model codes for two bearing parts. NSK now claims that Commerce committed an error in correcting NSK's mistake.

■ In its administrative case brief, NSK asserted that the two model numbers at issue should have been renamed and Commerce, relying on such, did in fact rename the parts. Thus, if any error continues to exist, it is through no fault of Commerce. It is NSK's responsibility to ensure that its submissions

to Commerce are correct. *Sugiyama*, 16 CIT at ——, 797 F.Supp. at 995; *Chinsung*, 13 CIT at 106, 705 F.Supp. at 601. NSK cannot expect Commerce to continuously remedy NSK's sloppy reporting of data. Thus, Commerce properly followed NSK's instructions for initially correcting the two model codes and this issue is hereby affirmed.

### 2. *Failure to Exclude Bearings*

Plaintiffs also claim that Commerce improperly failed to exclude bearings not subject to the antidumping duty orders from this review. NSK claims that Commerce's assessment methodology for exporter's sales price sales is contrary to law in that Commerce reviewed sales rather than the entries of merchandise which are the subject of the administrative review.

NSK claims that Commerce must restrict its calculation of the antidumping duties to entries of merchandise subject to the antidumping duty orders citing 19 U.S.C. § 1675(a)(2) (1988). Furthermore, NSK claims that Commerce's inclusion of sales of bearings that were entered into the United States prior to November 9, 1988 was contrary to law.

According to 19 U.S.C. § 1675(a)(2) (1988), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

Commerce claims that it followed the statute because it computed foreign market value and United States price and determined the difference between the two. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Partial Judgment Upon the Administrative Record* at 27. Commerce further claims that they properly reviewed all bearing sales made during the review period rather than only bearings that were entered and sold during the review period because (1)

there is usually a lag time between entry and sale, (2) the entry data is often unavailable during the review, (3) a dumping margin cannot be determined without a sale, (4) dumping on sales made during the review period is representative of dumping on entries made during the review period, and (5) review of sales, which can cover many entries of merchandise, can eliminate the necessity of conducting multiple reviews of the same sales information because a sale can cover entries made during several review periods. *Id.* at 28.

■ This Court recently stated that the "purpose and clear meaning of the language of the antidumping duty statute requires that there be some meaningful sale to, or in, the U.S. market which can be compared to FMV [foreign market value] to derive the dumping margin." *Torrington Co. v. United States*, 17 CIT ——, ——, 818 F.Supp. 1563, 1574 (1993).

■ In this case, although Commerce looks at sales to calculate dumping margins, dumping duties were assessed only upon the entries made during the period of review. Thus, Commerce's methodology for calculating dumping duties in this case is reasonable, and this issue is hereby affirmed.

### 3. *Classification of After–Market Sales*

Plaintiffs also claim that Commerce improperly classified NSK's after-market sales to OEMs at the same level of trade as other sales to OEMs.

In its final results, Commerce determined that sales of bearings are made at two levels of trade: (1) sales to original equipment manufacturers and (2) sales to distributors, retailers, and after-market sellers. *Issues Appendix*, 56 Fed.Reg. at 31,693. Plaintiffs claim that Commerce improperly included in the "sales to OEMs" category, sales to OEMs of replacement bearings for use in their own production equipment. NSK further claims that it sold such replacement bearings to OEMs both directly and through related and unrelated distributors. They now claim that Commerce should have treated these sales as after-market sales.

Commerce's regulations state that it should "calculate foreign market value and United States price based on sales at the same commercial level of trade." 19 C.F.R. § 353.58 (1991). Comparisons must be made by comparing "price at a specific, 'common' point in the chain of commerce." *Smith–Corona Group v. United States,* 713 F.2d 1568, 1572 (Fed.Cir.1983).

It is well-established, however, that the respondent has the burden of proving Commerce's alleged error. *See Timken Co. v. United States,* 11 CIT 786, 804, 673 F.Supp. 495, 513 (1987). In *Timken,* the Court stated that

> [t]he ITA acts reasonably in placing the burden of establishing adjustments on a respondent that seeks the adjustments and that has access to the necessary information. Were the ITA to act otherwise, respondents would have an incentive to destroy or to fail to produce the more detailed information that would either support or rebut their own assertions regarding directness or indirectness of various expenses.

*Id.*

In its final determination Commerce stated that NSK "has not demonstrated that the selling expenses incurred in these distributor sales are comparable to those for direct OEM sales." *Final Results,* 56 Fed.Reg. at 31,710. After examining the administrative record in this case, the Court agrees that NSK has failed to satisfy its burden of proof. Therefore, Commerce's determination as to this issue is hereby affirmed.

### 4. *Comparison of Sales*

Finally, plaintiffs claim that Commerce improperly failed to compare sales at comparable quantities. NSK claims that it asked Commerce to compare, as required by law, sales at comparable quantities because NSK sold bearings in the home market in both very large and very small quantities.

The antidumping law requires that Commerce compare merchandise sold "in the usual commercial quantities and in the ordinary course of trade for home consumption." 19 U.S.C. § 1677b(a)(1)(A) (1988 & Supp. 1993).

Plaintiffs, however, have "the burden of proving that its … sales were not sold in the ordinary commercial quantities and in the ordinary course of trade." *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526, 1530 (1992).

In its final determination, Commerce stated that

> the Department would have taken differences in quantities into account if NSK had demonstrated a clear correlation between price and quantity. This correlation is not apparent from NSK's response. Therefore, the Department sees no justification for disregarding small quantity sales. Similarly, NSK has failed to demonstrate that not less than 80 percent of the sales used for comparisons were made at the same price.

*Issues Appendix,* 56 Fed.Reg. at 31,712.

In this case, NSK has not established that its smaller quantity home market sales are not in the ordinary course of trade or are not sold in the usual commercial quantities. Therefore, Commerce's determination as to this issue is affirmed.

### Conclusion

In accordance with the foregoing opinion, plaintiffs' motion for partial judgment on the agency record is denied in all respects as Commerce's determination was reasonable and in accordance with law. Furthermore, since all issues have been decided, this case is hereby dismissed.

### JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision,

322

**IT IS HEREBY ORDERED** that plaintiffs' motion for judgment on the agency record is denied in all respects, and it is further

**ORDERED** that since there are no issues remaining, this case is dismissed.