NSK Ltd. and NSK Corp., plaintiffs *v.* United States, defendant, and Timken Co., defendant-intervenor

Court No. 92–03–00158

(Dated September 10, 1993)

*Coudert Brothers (Robert A. Lipstein, Matthew P. Jaffe* and *Nathan V. Holt)* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis)*; of counsel: *Joan L. MacKenzie,* Senior Counsel, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Patrick J. McDonough* and *Julie Chasen Ross)* for defendant-intervenor.

## Opinion

Tsoucalas, *Judge:* Plaintiffs move pursuant to Rule 56.1 of the Rules of this Court for judgment upon the agency record claiming that the Department of Commerce, International Trade Administration ("Commerce"), (1) committed several clerical errors, (2) improperly excluded cost of production data submitted by NSK, (3) incorrectly calculated antidumping duty margins on merchandise imported into the United States prior to the period of review, (4) incorrectly deducted direct selling expenses in the U.S. from exporter's sales price, and (5) erroneously compared normal grade bearings with high precision grade bearings in *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 57 Fed. Reg. 4,951 (1992).

On November 20, 1989, Commerce published a notice of initiation of an administrative review of antidumping duty orders covering tapered roller bearings and parts thereof from Japan from October 1, 1988 through September 30, 1989. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 54 Fed. Reg. 48,010 (1989). Commerce published its preliminary results of the administrative review on May 6, 1991 and estimated the antidumping duty margin to be 30.46%

for NSK. *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished From Japan; Preliminary Results of Antidumping Duty Administrative Review ("Preliminary Results"),* 56 Fed. Reg. 20,593 (1991). On February 11, 1992, Commerce published its Final Results establishing an antidumping duty margin of 40.37% for NSK. *Final Results,* 57 Fed. Reg. at 4,960.

DISCUSSION

In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed. Cir. 1990).

1. *Clerical Errors:*

NSK claims that in its final determination Commerce committed three clerical errors.

A. *Identification of Part Number:*

First, NSK claims that a 19 digit part number ending in "UOI" was misidentified as ending in "VOI." Commerce concedes this clerical error and agrees that this case should be remanded to Commerce for correction of such error.

B. *Thrust Bearings:*

NSK claims that in attempting to correct a clerical programming error in the treatment of bearings with a Y2 factor equal to zero (*i.e.,* thrust bearings) in the preliminary determination, Commerce perpetuated another error in the final determination, which resulted in the comparison of a thrust bearing sold by NSK in the United States with a dissimilar product sold in the home market.

In the Final Results, Commerce compared U.S. thrust bearing models with home market thrust bearing models. When there were no sales of thrust bearing models in the home market, Commerce looked for "similar" home market tapered roller bearing ("TRB") models. *Defendant's Memorandum in Partial Opposition to Plaintiff's Motion for Judgment on the Agency Record ("Defendant's Memorandum")* at 6–7.

On several occasions, using its five factor model match methodology, Commerce determined that a U.S. TRB model with a Y2 factor equal to zero was "similar" and, therefore, comparable with a home market TRB

model with a Y2 factor equal to 12. *Id.* at 7. The fact that the value of the Y2 factor was not identical for both models did not render them dissimilar. In determining "such or similar" merchandise, Commerce examined five criteria including (1) inside diameter, (2) outside diameter, (3) width, (4) dynamic load rating, and (5) the Y2 factor. *Id.* at 6. In focusing upon the Y2 factor, NSK ignores the importance of the other four factors used in selecting "similar" merchandise. After evaluating all of the criteria used to select similar merchandise in this case, this Court deems Commerce's selection as reasonable. Therefore, no clerical error occurred in the comparison with thrust bearings and this issue is hereby affirmed.

## C. *Adjustments for Differences in Merchandise:*

NSK claims that a third clerical error occurred in Commerce's calculation of adjustments for differences in the physical characteristics of merchandise sold in the U.S. and the Japanese market. Pursuant to Commerce's orders, NSK reported cost of production information by quarter under the variable "difmer." Commerce utilized this information in adjusting for differences in merchandise, and calculated an average value for difmer to insure that merchandise with differences in physical characteristics representing more than twenty percent of the cost of production would not be identified as similar merchandise. NSK claims, however, that Commerce erroneously excluded certain difmer data calculations.

Commerce concedes that in making such adjustments it failed to search for difmer data submitted for the preceding quarter. *Defendant's Memorandum* at 8. Thus, this case should be remanded back to Commerce so that it can search for, and then average, difmer data reported for the quarter during which a particular TRB model was sold and for the preceding quarter if it finds none in the same quarter as that in which the sale occurred.

## 2. *Cost of Production Data:*

NSK further claims that Commerce improperly disregarded cost of production data submitted by NSK, failed to compare this data to relevant home market sales, and as a consequence excluded certain home market sales transactions from its calculation of foreign market value.

Commerce states that given the significant volume of home market sales involved in this review, which covered several respondents, Commerce first examined the sales to determine whether it was appropriate to average the respondents' home market sales in accordance with 19 U.S.C. § 1677f–1 (1988 & Supp. 1993). Commerce subsequently determined that the overall weighted-average prices were representative of NSK's transactions under consideration because the weighted-average price for each model sold by NSK over the entire period did not vary meaningfully from the monthly weighted-average prices of sales. *Preliminary Results,* 56 Fed. Reg. at 20,594. Commerce then calculated the

single FMV for each TRB model sold by NSK, or on an annual weighted-average basis. *Id.*

In certain instances in which NSK failed to submit cost of production data for the sales quarter and the preceding quarter, Commerce claims that it had no choice but to disregard the sale because the sale may have been made at below the cost of production. Commerce further claims that NSK's failure to submit cost of production data for the appropriate period of time precluded Commerce from calculating FMV for these sales upon the basis of constructed value. Commerce, however, did not look to the production of merchandise subsequent to the date of sale to determine whether the home market sale was below the cost of production. Therefore, this case is also remanded so that Commerce may consider all cost of production information on the record, including cost information reported for quarters subsequent to the sale.

3. *Merchandise Imported Prior to the Period of Review:*

NSK further claims that Commerce incorrectly calculated antidumping duty margins on merchandise imported into the United States prior to the period of review.

Plaintiffs also claim that Commerce improperly failed to exclude bearings not subject to the antidumping duty orders from this review. NSK claims that Commerce's assessment methodology for exporter's sales price sales is contrary to law in that Commerce reviewed sales rather than the entries of merchandise which are the subject of the administrative review.

NSK states that Commerce must restrict its calculation of the antidumping duties to entries of merchandise subject to the antidumping duty orders, citing 19 U.S.C. § 1675(a)(2) (1988).

According to 19 U.S.C. § 1675(a)(2), the administering authority shall determine—

> (A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and
> (B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

Commerce properly reviewed all bearing sales made during the review period rather than only bearings that were entered and sold during the review period because

> (1) there is usually a lag time between entry and sale, (2) the entry data is often unavailable during the review, (3) a dumping margin cannot be determined without a sale, (4) dumping on sales made during the review period is representative of dumping on entries made during the review period, and (5) review of sales, which can cover many entries of merchandise, can eliminate the necessity of conducting multiple reviews of the same sales information because a sale can cover entries made during several review periods.

*NSK Ltd. v. United States*, 17 CIT 590, 825 F. Supp. 315 (1993).

This Court recently stated that the "purpose and clear meaning of the language of the antidumping duty statute requires that there be some meaningful sale to, or in, the U.S. market which can be compared to FMV [foreign market value] to derive the dumping margin." *Torrington Co. v. United States,* 17 CIT 199, 212, 818 F. Supp. 1563, 1572 (1993). Furthermore, the Court recently affirmed Commerce's assessment methodology stating that "although Commerce looks at sales to calculate dumping margins, dumping duties were assessed only upon the entries made during the period of review." *NSK Ltd.,* 17 CIT at 595, 825 F. Supp. 315 (1993). Thus, Commerce's methodology for calculating dumping duties in this case is reasonable and this issue is hereby affirmed.

### 4. *Direct Selling Expenses:*

NSK also claims that Commerce incorrectly deducted direct selling expenses in the United States from the exporter's sales price. This issue has consumed the Court's time in recent decisions and the Court has consistently held that "direct selling expenses are properly characterized as differences in circumstances of sale giving rise to an adjustment of FMV." *NSK Ltd. v. United States,* 17 CIT 251, 253–54, Slip Op. 93–50 at 6 (April 2, 1993); *NTN Bearing Corp. of America v. United States,* 17 CIT 254, 256, Slip Op. 93–51 at 4 (April 13, 1993); *NTN Bearing Corp. of America v. United States,* 17 CIT 272, 273–74, Slip Op. 93–56 at 4 (April 21, 1993); *NTN Bearing Corp. of America v. United States,* 14 CIT 623, 637, 747 F. Supp. 726, 738–39 (1990); *Timken Co. v. United States,* 11 CIT 786, 800, 673 F. Supp. 495, 509 (1987).

Although the law is clear on this issue, "Commerce repeatedly ignores the law and disobeys the decisions of this Court. A remand in this case would be futile since it would affect only deposit rates." *NSK Ltd.,* 17 CIT at 254, Slip Op. 93–50 at 6. Furthermore, any overpayment of deposits will be refunded to NSK together with interest pursuant to 19 U.S.C. §§ 1673f(b) and 1677g (1988 & Supp. 1993). *NSK Ltd. v. United States,* 17 CIT 500, 501, Slip Op. 93–92 at 4 (June 3, 1993).

### 5. *Comparison of Grade Bearings:*

NSK claims that Commerce also erroneously compared normal grade bearings with high precision grade bearings. It claims that Commerce's model match methodology failed to recognize important distinctions between normal grade and high precision grade bearings, which resulted in the comparison of highly dissimilar merchandise.

At the administrative level Commerce disagreed with NSK stating that the "physical criteria pertinent to model match selection have been well established in previous segments of this proceeding. NSK has not provided evidence that the chosen physical criteria and/or the standard for the comparable value of merchandise are inadequate." *Final Results,* 57 Fed. Reg. at 4,952.

In this review, Commerce utilized a five characteristic model match methodology to determine such or similar merchandise. The Court has upheld this methodology as reasonable in the past. *NTN Bearing Corp.*

*of America v. United States,* 14 CIT 623, 747 F. Supp. 726 (1990). In *NTN Bearing Corp.*, the Court noted that Commerce has "broad discretion in the selection of methodology" and that, "absent a showing of unreasonableness," Commerce's choice of methodology should be upheld. *Id.* at 633, 747 F. Supp. at 736. "Such or similar" merchandise is defined as:

> (A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.
>
> (B) Merchandise—
>> (i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,
>> (ii) like that merchandise in component material or materials and in the purposes for which used, and
>> (iii) approximately equal in commercial value to that merchandise.
>
> (C) Merchandise—
>> (i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,
>> (ii) like that merchandise in the purposes for which used, and
>> (iii) which the administering authority determines may reasonably be compared with that merchandise.

19 U.S.C. § 1677(16) (1988 & Supp. 1993). Furthermore, it is the party contesting Commerce's methodology that has the burden of demonstrating that Commerce's methodology was unreasonable. *Timken Co. v. United States,* 11 CIT 786, 792–93, 673 F. Supp. 495, 503 (1987). While NSK has demonstrated some differences, these differences as a whole are not probative of whether normal and high precision bearings may be considered "such or similar" merchandise under the statute (19 U.S.C. § 1677(16)). Furthermore, the Court has deemed merchandise as similar in the past despite the products having different characteristics or uses. *See U.H.F.C. Co. v. United States,* 916 F.2d 689 (Fed. Cir. 1990); *United Engineering and Forging v. United States,* 15 CIT 561, 779 F. Supp. 1375 (1991); *Monsanto Co. v. United States,* 12 CIT 937, 698 F. Supp. 275 (1988); *Kerr-McGee Chem. Corp. v. United States,* 14 CIT 422, 741 F. Supp. 947 (1990). Thus, when considered as a whole, Commerce acted reasonably in comparing normal grade bearings with high precision grade bearings.

## CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion for judgment on the agency record is granted in part and this case is remanded to Commerce to (1) correct the misidentification of a part's nineteen digit number, (2) search and average difmer data reported for the quarter during which a particular TRB model was sold and for the preceding quarter if it finds none in the same quarter as that in which the sale oc-

curs, and (3) reconsider all cost of production information on the record including cost information reported for quarters subsequent to sale. Plaintiffs' motion is denied in all other respects. Remand results are due within sixty (60) days of the date this opinion is entered. Comments to remand results are due within thirty (30) days thereafter and responses to the comments are due within fifteen (15) days of the date comments are due.